

**IT IS ORDERED as set forth below:**

**Date: October 6, 2017**

_____
**James R. Sacca**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| BAVARIA YACHTS USA, LLLP, | ) | |
| | ) | Case No. 16-68583-JRS |
| Debtor. | ) | |
| | ) | |
| BAVARIA YACHTS USA, LLLP, | ) | Adversary Proceeding |
| | ) | |
| Plaintiff, | ) | Case No. 17-05020-JRS |
| | ) | |
| v. | ) | |
| | ) | |
| BAVARIA YACHTBAU GmbH, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S RENEWED
PARTIAL MOTION TO DISMISS**

This case involves a broken business relationship between a German yacht manufacturer and

its exclusive dealer in the United States, the Debtor in this case, the contracts for which provide that

any litigation arising under or in connection with the contracts must be brought in Germany.

1

Debtor Bavaria Yachts USA, LLLP ("BUSA," "Plaintiff," or "Debtor") commenced this adversary proceeding with some claims arising under state law, such as fraud, negligent misrepresentation, breach of implied warranties, tortious interference with contract, and unjust enrichment, and others arising under the federal bankruptcy law, such as avoidance claims, validity, extent and priority of liens, equitable subordination and an objection to claim. Defendant Bavaria Yachtbau GmbH ("Yachtbau" or "Defendant") argues that the many of BUSA's claims should be dismissed for failure to state a claim upon which relief can be granted and because the contracts governing this business relationship have valid forum selection clauses which require certain of the claims to be dismissed and refiled in Würzburg, Germany. Before the Court is Yachtbau's Renewed Partial Motion to Dismiss Claims in Plaintiff's Amended Complaint and Supporting Memorandum of Law (the "Motion"). [Doc. 17].  BUSA contends it has stated claims upon which relief can be granted and disputes the applicability, validity and enforceability of the forum selection clauses.

## FACTUAL BACKGROUND

Yachtbau is a German GmbH—or a German company with limited liability—that manufactures motor and sailing yachts, with its principal place of business in Giebelstadt, Germany. [Defendant's Answer to Amended Complaint and Counterclaim ("Def.'s Answer") ¶ 9]. BUSA is a Georgia limited liability limited partnership with its principal place of business in Atlanta, Georgia. [Def.'s Answer ¶ 8]. Generally, the parties' business relationship consisted of BUSA acting as the exclusive dealer in the United States selling yachts made by Yachtbau [Doc. 17 at p. 4] pursuant to separate contracts for the purchase and sale of the sailboats and motorboats, respectively (collectively, the "Dealer Contracts"), but there was also an agreement in July 2016, all of which are discussed below.

2

Yachtbau and Horizon Bavaria USA, LLC[1] entered into their first contractual agreement for the purchase and sale of sailboats (the "First Sailboat Contract") on January 17, 2011. The First Sailboat Contract was assigned to Horizon Bavaria USA, LLLP and effective March 8, 2011. [Doc. 10, Ex. 1; Doc. 16 ¶ 8]. The First Sailboat Contract was later replaced with the second agreement for the purchase and sale of sailboats (the "Second Sailboat Contract") on November 8, 2011.

The agreement covered various topics including that BUSA could not be involved with Yachtbau's competitors. [Doc. 10, Ex. 2 ¶ 4.1]. Additionally, the Second Sailboat Contract provided BUSA "a discount of 2% as a lump sum consideration for all required warranty repair work performed by [BUSA]." [Doc. 10, Ex. 2 Annex 3]. The Second Sailboat Contract also contained provisions that required BUSA to perform customer service, warranty, maintenance, and repair work for the boats as requested by those who purchase the boats. [Amended Complaint ¶ 25]. BUSA was obligated to pay out of pocket for these costs and would be provided a 2% lump sum discount from BUSA's purchase price of the boat. *Id.* However, BUSA claims these repair costs greatly exceeded 2% of the retail price. [Amended Complaint ¶ 26]. BUSA alleges the design and quality of the yachts were not suitable for a United States customer and Yachtbau promised it would resolve the issues. [Amended Complaint ¶¶ 19-20]. As BUSA made the necessary repairs to the yachts, it alleges that the 2% became insufficient to cover all the manufacturing defects. [Amended Complaint ¶ 164]. The Second Sailboat Contract also contained forum selection and merger clauses stating: (a) "The exclusive place of jurisdiction for all disputes arising under or in connection with this Agreement shall be in Würzburg, Germany," and (b) "This Agreement replaces any prior agreements

---

[1] Kenny Feld, Andrew Thompson, and Sylvia Driver formed Horizon Bavaria USA, LLC. [Amended Complaint ¶ 13]. In June of 2013 Horizon Bavaria USA, LLLP changed its registered name with the Secretary of State to Bavaria Yachts USA, LLLP, the name of the Debtor in this case. [Def.'s Counterclaim ¶ 12].

with respect to its subject matter in its entirety. There are not [sic] verbal side agreements." [Doc. 10, Ex. 2 ¶ 15.5; Doc. 10, Ex. 2 ¶ 15.2].

On May 15, 2013, Yachtbau and Horizon Bavaria USA, LLLP entered into an amendment to the Second Sailboat Contract (the "Amendment to the Second Sailboat Contract"). [Doc. 10, Ex. 4]. BUSA alleges that this agreement was "based on continued confidence in BUSA's investments, brand building, and customer satisfaction." [Amended Complaint ¶ 16]. At this time, BUSA claims it invested another $350,000 in its relationship with Yachtbau. [Amended Complaint ¶ 17]. BUSA also argues that Yachtbau was aware that the additional investment was based on the extended commitment between the parties and Yachtbau's commitment to accelerate actions to remedy the design flaws documented in the previous years. [Amended Complaint ¶17].

After the Amendment to the Second Sailboat Contract, BUSA claims the design issues and quality flaws continued. [Amended Complaint ¶ 18]. Specifically, BUSA contends the design and manufacturing defects included significant leaks and sinking, persistent failures of air conditioning units, generator sets and electrical systems, motor yacht engine rooms excessively and prematurely rusting, and fire suppression system failures. [Amended Complaint ¶ 27]. BUSA argues it continued to invest in its relationship with Yachtbau because of the continued promises from Yachtbau to remedy the flaws and the ability to recover after-sale support costs not to exceed the 2% allowance provided in the Dealer Contracts. *Id.* Despite alleged defects in the inventory, the parties began discussion of expanding BUSA's dealership to include motor yachts. And, on September 25, 2014, Yachtbau and Bavaria Motor Yachts USA, LLC[2] entered into the Motorboat Contract. The Motorboat Contract contained similar provisions as the Second Sailboat Contract regarding BUSA's

---

[2] In 2015 Bavaria Motor Yachts USA, LLC merged with and into BUSA. [Doc. 15 ¶ 16].

exclusivity, the 2% discount, the merger clause, and the forum selection clause. [Doc. 10, Ex. 5 ¶ 4.1 & Annex 3; Doc. 10, Ex. 5 ¶ 15.5; Doc. 10, Ex. 5 ¶ 15.2].

The Motorboat Contract was amended (the "Amendment to the Motorboat Contract") on September 29, 2014. [Doc. 10, Ex. 6]. BUSA documented and identified therein specific improvements needed to make these boats "relevant to the U.S. market demands," which BUSA alleges Yachtbau acknowledged in order to have BUSA continue to invest in their relationship. [Amended Complaint ¶ 23]. BUSA alleges that it funded its operations related to the Motorboat Contract and the Amended Motorboat Contract with an initial equity investment of $300,000, plus $300,000 secured by BUSA, and one final investment totaling $1,450,000 by mid-2015. [Amended Complaint ¶ 24]. Further, an additional $2,050,000 was allegedly invested "by numerous individuals based on commitments made by Bavaria Yachtbau." *Id.* When combined with the original investments, the total capital invested by BUSA in its relationship with Yachtbau (initial investments, interim investments, and those investments surrounding the Motorboat Contract) was allegedly more than $4,500,000 at the end of 2015. *Id.*

As a result of the alleged defects with the yachts and BUSA's obligation to pay the out of pocket costs, BUSA alleges that it was in an economic crisis resulting in a "payables gap." [Amended Complaint ¶ 30]. One last contract between Yachtbau and BUSA was entered into on July 21, 2016 (the "July 2016 Agreement"). [Doc. 10, Ex. 7]. Yachtbau alleges that in July of 2016, it met with BUSA's general partner, Kenny Feld, to learn about BUSA's current financial situation. [Def.'s Counterclaim ¶ 26]. Yachtbau argues that the purpose of the July 2016 agreement was to reduce the debts BUSA owed. [Def.'s Counterclaim ¶ 27]. Conversely, BUSA contends that it agreed to invest more in its relationship with Yachtbau in hopes that Yachtbau would honor its side of the arrangements in fixing the defective boats. [Amended Complaint ¶ 34]. The agreement provided that

5

BUSA immediately pay Yachtbau $173,000 (or 156,000 EURO) and BUSA would agree to pay 100% of all boat revenues directly to Yachtbau. [Amended Complaint ¶ 34]. Further, BUSA alleges that Yachtbau agreed to "loan-back" to BUSA cash funds to cover its monthly operational costs and to send a team to fix all the issues with the boats. *Id.* At this point, BUSA claims that Yachtbau began actively soliciting dealers to take over BUSA's business in the United States. [Amended Complaint ¶ 36].

Yachtbau contends that the parties had subsequently begun negotiating termination of their business relationship, and BUSA sent a demand letter threatening to sue Yachtbau unless it bought BUSA's equity in Yachtbau. [Def.'s Counterclaim ¶¶ 29-30]. On October 4, 2016, Yachtbau terminated the Dealer Contracts. Yachtbau contends that BUSA threatened to file for bankruptcy in attempts to recover its equity from Yachtbau. [Def.'s Counterclaim ¶ 32]. BUSA filed for Chapter 11 relief two weeks later on October 18, 2016 at which time BUSA was left holding an inventory of ten boats (the "10 Boats"). BUSA argues that when it did attempt to sell the 10 Boats, Yachtbau continually thwarted BUSA's efforts, both before and after it filed for bankruptcy. [Amended Complaint ¶ 38]. BUSA alleges that in the end, it had invested well over $5,000,000 of its own capital in its business relationship with Yachtbau. [Amended Complaint ¶ 37].

## Procedural Posture

Yachtbau has filed two proofs of claims in this case: Proof of Claim No. 26 and its amendment for $2,745,134.41 ("Claim 26") and Proof of Claim No. 27 for $1,786,783.72 ("Claim 27"). Both claims were filed on January 9, 2017 and the amendment to Claim 26 was filed on February 17, 2017. Although Yachtbau checked the box on Claim 26 to indicate the claim was secured by goods, it also indicated that it was the owner of the goods—the 10 Boats sold and shipped

to BUSA under the Dealer Contracts which were still in BUSA's possession on the bankruptcy

petition date. Yachtbau designated that Claim 27 was unsecured and represents all the debt allegedly

owed for goods, shipping costs, and other services surrounding the relevant agreements between the

parties.   BUSA objects to both of Yachtbau's proofs of claim.  In addition to a few creditors with

disputed claims, including Yachtbau, BUSA identified on its Schedule of Liabilities filed with the

Court more than 65 creditors with undisputed claims of more than $2,000,000, almost all of which

are located in the United States.  Yachtbau alleges that some of those claims are overstated or

improperly characterized as loans instead of capital contributions or perhaps may be debts owed by

affiliates of BUSA.  At the time BUSA filed for bankruptcy relief, all of its offices were located in

the United States and its corporate offices were located in Georgia.

In response to BUSA's original complaint commencing this adversary proceeding, Yachtbau

simultaneously filed its original Partial Motion to Dismiss and Supporting Memorandum of Law (the

"Original Motion") [Doc. 9] and Answer to BUSA's Complaint [Doc. 10]. BUSA filed its response

to the Original Motion [Doc. 14] along with an Amended Complaint [Doc. 15]. The Amended

Complaint contains twelve claims including fraud in the inducement; negligent misrepresentation;

unjust enrichment; breach of implied warranty of merchantability; breach of implied warranty of

fitness for a particular purpose; tortious interference; avoidance and recovery of preferential transfers

pursuant to 11 U.S.C. §§ 547 and 550; avoidance and recovery of fraudulent transfers pursuant to 11

U.S.C. §§ 548(a)(1)(B) and 550; avoidance and recovery of fraudulent transfers under state law; a

claim to determine validity, priority, or extent of Yachtbau's interest in the 10 Boats; a claim

objection; and equitable subordination. In its claim objection in the Amended Complaint, BUSA

objected to Claims 26 and 27 because Yachtbau allegedly breached the Dealer Contracts and related

agreements between the parties, and it asserts it should be able to set off and recoup the amounts due to it from the amounts Yachtbau claimed. [Doc. 15 ¶ 155].

Yachtbau then filed its Answer to Amended Complaint and Counterclaim [Doc. 17] and the Motion now before the Court. Yachtbau has indicated it does not consent to entry of final orders of judgment for the claims asserted by BUSA. Yachtbau's Answer to Amended Complaint and Counterclaim also contained a counterclaim asking for a declaratory judgment declaring that German law governs the ownership of the 10 Boats, but even if it does not, that the 10 Boats are not property of the bankruptcy estate. BUSA, on the other hand, contends the rights and interests of the parties in the 10 Boats are governed by the Uniform Commercial Code and because Yachtbau did not perfect a security interest in the 10 Boats, the 10 Boats are unencumbered assets of the bankruptcy estate.

BUSA then filed a Renewed Response in Opposition to Defendant's Renewed Partial Motion to Dismiss. [Doc. 28]. Yachtbau subsequently filed its Reply in Support of the Renewed Partial Motion to Dismiss. [Doc. 32]. A hearing was held on the Motion[3] after which the Court instructed the parties to submit post-hearing, supplemental briefs on issues surrounding the Motion. Both parties timely filed their supplemental briefs [Docs. 42 & 43] and the parties subsequently filed replies to the supplemental briefs. [Docs. 52, 53 & 63].

---

[3] Yachtbau previously filed a Motion for Relief from the Automatic Stay or, in the Alternative, for Declaration that Ten Boats are Not Property of Debtor's Bankruptcy Estate. *See In re Bavaria Yachts USA, LLLP*, Case No. 16-68583-JRS. Specifically, Yachtbau argued that it owned the 10 Boats in BUSA's possession. Yachtbau cited to the choice of law provisions and the retention of title clause in the Dealer Contracts. The Motion for Relief from Stay was not argued at the hearing as originally intended because the parties agreed that they should be considered with the claims in the Adversary Proceeding. Therefore, the arguments at the hearing centered only on the issues in the Motion.

**Yachtbau's Partial Motion to Dismiss**

BUSA's Amended Complaint includes claims brought under state law and the Bankruptcy Code. Yachtbau's Motion prays for the Court to dismiss certain claims on essentially two theories: (1) BUSA's non-core claims should be dismissed under the doctrine of *forum non conveniens*, or (2) BUSA has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

First, Yachtbau alleges that the following claims are non-core and related to the Dealer Contracts and, therefore, governed by the forum selection clauses in the Dealer Contracts which should result in them being dismissed under the doctrine of *forum non conveniens*: fraud in the inducement, negligent misrepresentation, unjust enrichment, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and tortious interference with contract (collectively, the "State Law Claims"). BUSA disputes that the State Law Claims are related to and governed by the Dealer Contracts and their forum selection clauses. Additionally, BUSA argues the forum selection clauses in the Dealer Contracts are not valid and thus not enforceable.

The claims in this Adversary Proceeding can be summarized as follows:

| BUSA's State Law Claims | BUSA's Bankruptcy Claims |
|---|---|
| Fraud in the Inducement | Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. § 547 & 550 |
| Negligent Misrepresentation | Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. § 548(a)(1)(b) & 550 |
| Unjust Enrichment | Fraudulent Transfers Under State Law |
| Breach of Implied Warranty of Merchantability | Claim to Determine Validity, Priority, or Extent of Yachtbau's Interest in the 10 Boats |
| Breach of Implied Warranty of Fitness for a Particular Purpose | Claim Objection |
| Tortious Interference with Contract | Equitable Subordination |

Second, Yachtbau argues that BUSA has failed to state a claim upon which relief can be granted for the following claims: fraudulent inducement, negligent misrepresentation, unjust enrichment, tortious interference, and equitable subordination.

## DISCUSSION

### A.  Are the State Law Claims Core or Non-core?

Yachtbau argues that because the State Law Claims are all non-core claims the forum selection clauses should apply to them. BUSA counters by arguing that (a) its claims do not arise under the Dealer Contracts and, therefore, are not subject to the forum selection clauses, (b) if the clauses are applicable, they are not valid because they are unreasonable and (c) the clauses are not enforceable because the State Law Claims are core claims. At the conclusion of the hearing on the Motion, the Court asked the parties to submit supplemental briefs on how the doctrine of *forum non conveniens* analysis is affected by BUSA's objection to Yachtbau's proof of claim in the underlying bankruptcy, which includes an allegation that BUSA is entitled to set off Yachtbau's claim based on the alleged damages that BUSA incurred pursuant to an alleged breach of contract by Yachtbau and any recovery on the State Law Claims.

Yachtbau argues that a breach of contract claim would still be governed by the doctrine of *forum non conveniens* and, even that claim was not governed by the doctrine, this would not affect the analysis for any of the other State Law Claims because they are non-core claims. In contrast, BUSA argues that Yachtbau subjected itself to this Court's equitable jurisdiction when it filed a proof of claim and the allowance or disallowance of a claim is a core proceeding. The Court finds that although the State Law Claims here are statutorily core under § 157(b)(2), constitutionally they are non-core proceedings on which this Court cannot enter a final judgment, but rather proposed

10

findings of fact and conclusions of law for the District Court's review.  As such, an issue remains about whether venue is proper even if this Court has the statutory and constitutional authority to hear a claim. *See Envirolite Enters., Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.*, 53 B.R. 1007, 1011 (S.D.N.Y. 1985).

A bankruptcy court's jurisdiction extends to "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Subject to constitutional limits, bankruptcy courts exercise power pursuant to 28 U.S.C. § 157. Further, a bankruptcy court may enter a final judgment in a core proceeding. 28 U.S.C. § 157(b)(1). Core proceedings are those that implicate the property of the bankruptcy estate, invoke a substantive right created by the Bankruptcy Code, or exist exclusively in the bankruptcy context. *Wortley v. Bakst*, 844 F.3d 1313, 1318 (11th Cir. 2017). A bankruptcy court may also hear non-core proceedings that are "otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1).  Non-core proceedings are those that exist "had there been no bankruptcy, [and the] action could have proceeded in state court and would be virtually identical," but the bankruptcy court cannot issue final judgments on those claims. *Cook v. Kmart Corp.*, No. 2:07-CV-0068-RWS, 2007 WL 2331072, at *2 (N.D. Ga. Aug. 10, 2007). Here, because the State Law Claims are derived from state law and could have proceeded absent the bankruptcy, they would generally be considered to be "related to," non-core claims. *See, e.g.*, *In re High-Top Holdings, Inc.*, No. 16-1007-WHD, 2016 WL 3135790 (Bankr. N.D. Ga. May 16, 2016) (finding fraud in the inducement as a non-core claim); *Vision Bank v. Platinum Invs., L.L.C.*, No. 11-00093-KD-B, 2011 WL 2144547 (S.D. Ala. May 11, 2011) (finding negligent misrepresentation is a non-core claim); *In re Flyboy Aviation Props., LLC*, 525 B.R. 510 (Bankr. N.D. Ga. 2015) (finding tortious interference is a non-core claim).

Additionally, "[e]ven if a proceeding would not otherwise fall within the core jurisdiction of the bankruptcy court," § 157(b)(2) provides a statutory list of core proceedings making "an otherwise non-core action against [a] creditor by the estate … into an action within the bankruptcy court's equitable jurisdiction." *Elec. Mach. Enters., Inc. v. Hunt Constr. Grp., Inc. (In re Elec. Mach. Enters., Inc.)*, 416 B.R. 801, 867-68 (Bankr. M.D. Fla. 2009). The statutory list of core proceedings includes the "allowance or disallowance of claims against the estate" and "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. §§ 157(b)(2)(B) and (b)(2)(C). As such, when a matter falls in the ambit of § 157(b)(2), the entire proceeding will be under the bankruptcy court's jurisdiction even though it may involve non-core claims.

However, the Supreme Court in *Stern v. Marshall* held that a bankruptcy court lacks constitutional authority to enter a final judgment on a state law "counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 131 S. Ct. 2594, 2620 (2011). In determining whether a bankruptcy court has the authority to issue a final judgment, "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618; *King Oil Field Servs. LLP v. PricewaterhouseCoopers, Monitor & Foreign Representative (In re Poseidon Concepts Corp.)*, 515 B.R. 811, 818 (Bankr. D. Colo. 2014) ("[The] Supreme Court recognized in *Stern* that § 157 does not affect federal bankruptcy jurisdiction.").

In this matter, Yachtbau filed two proofs of claim in BUSA's Chapter 11 bankruptcy case. The Amended Complaint involves the allowance or disallowance of a claim against the estate under § 157(b)(2)(B) because it specifically objects to Yachtbau's claims and lien and the final treatment of and distribution on Yachtbau's claims will not be determined until the resolution of the claims in this adversary proceeding. Until Count X (Claim to Determine Validity, Priority or Extent of

Yachtbau's Interest in the 10 Boats) and Count XI (Claim Objection) are resolved along with the other counts, the recovery on which could negate or reduce the amounts to be distributed to Yachtbau as pled in Paragraph 155 of the Amended Complaint, it can be argued that the amount of the claim held by Yachtbau cannot be ascertained and, as such, the instant adversary proceeding constitutes a counterclaim and is a core proceeding under § 157(b)(2)(C).

While it does appear that it would be necessary to resolve any counterclaim in order to resolve the amount of Yachtbau's claim, it does not appear that is what the Supreme Court meant in *Stern*. If that was the case, all counterclaims would constitutionally be core proceedings, but clearly the Supreme Court held otherwise because *Stern* itself involved a counterclaim. It appears that what the Supreme Court meant by the counterclaim being necessary to resolve the amount of the claim held by Yachtbau refers to whether BUSA's claims are "necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Id.* at 2611. For example, and as applied to this case, Yachtbau filed two proofs of claim. One claim appears to be for the invoice value of the 10 Boats delivered to BUSA, the proceeds from the sale of which Yachtbau claims would have to have been paid to it pre-bankruptcy according to the Dealer Contracts.[4] The second claim is for interest and goods, such as parts sold to BUSA by Yachtbau. The issues in determining the State Law Claims will not determine the amount owed by BUSA to Yachtbau on those proofs of claim because the issues in the proofs of claims are more along the lines of whether or not the claims are properly calculated, the goods were delivered or the products were defective, etc. Although the State Law Claims may augment the estate or otherwise affect the ultimate distribution to Yachtbau by way of set off, they do not affect the calculation of amount that is owed by BUSA to Yachtbau against which any set off would be effectuated.

---

[4] The Court is merely making a comment on the proof of claims for discussion purposes and is not intending to make any findings of fact or conclusions of law regarding those claims.

The dissenting opinion in *Stern* also shows that the State Law Claims in this situation would be non-core claims based on the majority's decision.  131 S. Ct. 2594, 2629-30 (2011). The dissent uses the not so uncommon hypothetical situation wherein a tenant files for bankruptcy, the landlord files a claim for unpaid rent and the tenant asserts a counterclaim for damages resulting from the landlord's failure to fulfill its obligations and wrongful dispossession of the tenant based on misrepresentations to the state court. Those counterclaims, so observe the dissent, do not stem from the filing of the bankruptcy itself, would not necessarily be resolved in the claims allowance process and "it would require the debtor to prove damages suffered by the landlord's failures, the extent to which the landlord's representations to the housing court were untrue, and damages suffered by the improper recovery of possession of the premises," so the bankruptcy court could not enter a final judgment on them. *Id*.   Therefore, the State Law Claims are non-core claims because they neither stem from the bankruptcy itself nor would necessarily be resolved as part of the allowance of Yachtbau's claims.

As such, under the *Stern* test, this Court may not issue a final judgment on the State Law Claims. However, the Court may still hear a proceeding that is statutorily core under § 157(b)(2) and has authority to enter an order denying a motion to dismiss under Rule 12 because when it does so it does not enter a judgment. *Settlers' Housing Servs., Inc. v. Bank of Schaumburg  (In re Settlers' Housing Servs., Inc.)*, 520 B.R. 253, 258-59 (Bankr. N.D. Ill. 2014).

Ultimately, even though the proceeding is statutorily core under § 157(b)(2) and this Court has jurisdiction to hear the claims, a forum selection clause may still be applicable. Determining the bankruptcy court's core versus non-core jurisdiction is not the same as determining whether venue is proper, and filing a proof of claim does not necessarily waive or defeat a forum selection clause. *Envirolite Enters., Inc.*, 53 B.R. at 1011.  Venue may still be improper even where the court has

14

jurisdiction. *Id.* (finding defendant did not waive the forum selection clause where improper venue was raised in the answer). Because Yachtbau listed improper venue as one of its affirmative defenses in its Answer, this Court now turns to the applicability, validity, and enforceability of the forum selection clauses.

### B.   The Dealer Contracts did not Merge with the July 2016 Agreement

In its Response to Yachtbau's position that the forum selection clauses in the Dealer contracts apply here, BUSA argues that the July 2016 Agreement merged with the Dealer Contracts and, therefore, because the July 2016 Agreement does not have a forum selection clause, none of its claims are subject to a forum selection clause. Yachtbau countered that the July 2016 Agreement did not satisfy the merger doctrine and, therefore, the forum selection clauses in the Dealer Contracts still apply.

Under the doctrine of merger, contracts will merge when there is a subsequent, valid contract that is inconsistent but covers all the subject-matter in the original contract. *Atlanta Integrity Mortg., Inc. v. Ben Hill United Methodist Church, Inc.*, 286 Ga. App. 795, 797, 798 n.4 (2007) (finding agreements did not merge where second agreement "merely [imposed] a maximum amount and method by which broker fees were to be paid"); *Wallace v. Bock*, 279 Ga. 744, 746 (2005) (finding agreement to purchase a house (original) and an escrow agreement (subsequent) did not merge). "[M]erger requires a showing of more than a similarity in subject matter." *Wallace*, 279 Ga. at 746.

The July 2016 Agreement covers specifics about future orders, payments, and sale of certain boats. However, it does not cover other topics in the Dealer Contracts, including trademarks, exclusivity requirements, marketing, repairs, warranties, disclosures, and more. The July 2016 Agreement is similar to the one in *Wallace* where the purchase agreement included construction of

the house and the ability to convey title to real property while the escrow agreement only covered the construction of the house. 279 Ga. at 746. The topics in the July 2016 Agreement do not completely cover those in the Dealer Contracts, and thus the July 2016 Agreement did not merge with the Dealer Contracts.

The matter is somewhat complicated here because some of BUSA's State Law Claims, or some portion of them, or the damages resulting from them, may arise under or be in connection with the July 2016 Agreement, which agreement does not have a forum selection clause. The Court will address the impact of that complication later in its discussion of the application of *forum non conveniens* to this case. Nevertheless, except to the extent the State Law Claims arise under or are in connection with the July 2016 Agreement and the claim for tortious interference the Court does find that the remaining portions of the State Law Claims do arise under or are in connection with the Dealer Contracts. Therefore, the Court must proceed to analyze the applicability of the doctrine of *forum non conveniens* to this case.

### C.  Application of *Forum Non Conveniens* to this Case

In its Motion, Yachtbau argues that the State Law Claims should be dismissed under the doctrine of *forum non conveniens*. "The essence of the common-law doctrine of *forum non conveniens* is that even when an action is brought in a court which has jurisdiction of the cause and of the parties and in which venue is proper, the court may decline to exercise jurisdiction and dismiss the action if another forum would be more convenient." *Sherwood Invs. Overseas Ltd. v. Royal Bank of Scotland (In re Sherwood Invs. Overseas Ltd., Inc.)*, 442 B.R. 834, 836 (Bankr. M.D. Fla. 2010). Traditionally, the *forum non conveniens* analysis was very similar to that of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). Specifically, the moving party had to demonstrate (1) an

adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Sherwood Invs. Overseas Ltd.,* 442 B.R. at 836 (quoting *Leon v. Millon Air, Inc.*., 251 F.3d 1305, 1311 (11th Cir. 2002)).

However, the *forum non conveniens* analysis changed with respect to matters involving forum selection clauses after the Supreme Court decision in *Atlantic Marine Construction Co. v. United States District Court for the Eastern District of Texas*, 134 S. Ct. 568 (2013). *Atlantic Marine* outlined a heightened standard to overcome a mandatory, valid forum selection clause.[5] A valid forum selection clause will be given controlling weight in "all but the most exceptional circumstances." *Caribbean Restaurants, LLC v. Burge King Corp.*, 23 F. Supp. 3d 70, 76 (D.P.R. 2014). The Supreme Court noted the following:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted… Second, a court … should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum …. Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

*Atlantic Marine*, 134 S. Ct. at 579-80. As such, because the private interest factors evidenced by an agreed upon forum selection clause weigh in favor of the agreed upon forum, the plaintiff bears the

---

[5] While *Atlantic Marine* focused on a motion to transfer under § 1404(a), courts apply the same reasoning for a motion to dismiss under *forum non conveniens. See Espie v. Wash. Nat'l Ins. Co.*, No. 2:14cv6-MHT, 2014 WL 2921022, at *9 (M.D. Ala. June 27, 2014).

burden of establishing the public interest factors disfavor a request to dismiss. *GDG Acquisitions, LLC v. Gov. of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014).

> **1. The Forum Selection Clauses Here are Neither Valid nor Enforceable Because They are not Reasonable Under the Facts of This Case and Violate Public Policy.**

Before a determination can be made under the *Atlantic Marine* analysis, the Court must first determine whether the forum selection clauses are valid and enforceable. If the forum selection clauses are valid and enforceable, then the *Atlantic Marine* analysis will apply. *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 967 (11th Cir. 2014). Yachtbau argues that the forum selection clauses in the Dealer Contracts are presumptively valid and when BUSA entered into the Dealer Contracts with such clauses, it waived the right to challenge the forum. BUSA disagrees and attacks the validity of the forum selection clauses in its Response to Yachtbau's Motion because they are so inconvenient that they are unreasonable and enforcement would be contrary to the public policy behind the Bankruptcy Code.

Generally, forum selection clauses are presumptively valid and enforceable.[6] *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Messmer v. Thor Motor Coach, Inc.*, No. 3:16-cv-1510-J-JBT, 2017 WL 933138, at *2 (M.D. Fla. Feb. 28, 2017) (noting the Supreme Court presupposed that the forum selection clause before it in *Atlantic Marine* was contractually valid). If the party resisting enforcement of the forum selection clause can establish that enforcement would be unreasonable, a court may find that the forum selection clause is invalid. *Wellogix Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766, 781 (S.D. Tex. 2014). Under the *Bremen* factors, enforcement would be unfair or unreasonable if (1) the formation of the forum selection clause was induced by fraud or

---

[6] However, a forum selection clause will not govern a constitutionally or statutorily core claim that "involves adjudication of federal bankruptcy rights wholly divorced from inherited contractual claims." *Fire Eagle L.L.C. v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 309 (5th Cir. 2013) (holding arbitration clause did not govern where claim was inextricably intertwined with right created by bankruptcy law—the interpretation of a credit bid).

overreaching, (2) the plaintiff would be deprived of his day in court because of the inconvenience or unfairness, (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy, or (4) enforcement of the clause would contravene public policy of the forum. *McArthur v. Kerzner Int'l Bah., Ltd.*, 607 F. App'x 845, 847 (11th Cir. 2015).

There is no allegation that the forum selection clauses were a result of fraud or overreaching under the first factor. However, BUSA does argue that enforcement under these circumstances would be so seriously inconvenient it would be unreasonable. A clause will not be unreasonable because of a mere inconvenience or additional expense alone. *Giuliano v. Genesis Fin. Sols., Inc. (In re Axiant, LLC)*, No. 12-50526 (MFW), 2012 WL 5614588, at *4 (Bankr. D. Del. Nov. 15, 2012) (finding difference between Georgia and Oregon courts was not depriving plaintiff of his day). "A party must affirmatively demonstrate that its financial situation is such that to transfer the action would deprive the party of its day in court" - filing for bankruptcy alone is insufficient. *Arrow Plumbing & Heating, Inc. v. N. Am. Mech. Servs. Corp.*, 810 F. Supp. 369, 373 (D.R.I. 1993); *see also Manchester Inc. v. Lyle (In re Manchester Inc.)*, 417 B.R. 377, 387 (Bankr. N.D. Tex. 2009) (finding Litigation Trustee was not deprived of his day in court because he lived in Chicago and difference between New York and Dallas forums were not gravely inconvenient). Therefore, the question is not "whether it would be more inconvenient for [BUSA] to litigate here than for [BUSA] to litigate in [Germany], but whether it would be so gravely inconvenient for [BUSA] to litigate in [Germany] that it would be effectively deprived of its day in court if forced to do so." *Cf. Access Care, Inc. v. Sten-Barr Network Sols., Inc. (In re Access Care, Inc.)*, 333 B.R. 706, 715 (Bankr. E.D. Penn. 2005).

19

### a. The forum selection clauses are so seriously inconvenient as to be unreasonable

BUSA does not argue that its status in bankruptcy is the only reason a German forum would be seriously inconvenient. Instead, BUSA argues that dismissing the claims at issue would have burdens that would render the new forum to be seriously inconvenient.

Unlike some other Chapter 11 cases, the Court finds that BUSA's financial wherewithal, or the lack thereof, affects its ability to fairly litigate these claims in a foreign venue. According to BUSA's monthly operating report for June 2017 [Doc. 237 in main case], it only has about $217,000 of undisputed, unencumbered funds as of June 30, 2017 and this Court has approved payment of professional fees in the amount of about $170,000 that have not yet been paid as of that date, leaving a balance of less than $50,000 to fund both the litigation in this case and the administration of the bankruptcy case.[7] If BUSA had to litigate portions of this proceeding in Germany, BUSA would have to hire counsel in Germany, discovery expenses would increase because all the necessary exhibits and documents would need to be translated from English to German and BUSA would also have to cover the costs for travel for its representatives and witnesses to and from Germany for depositions, hearings, or document review. Given BUSA's financial position and those expenses, it very unlikely, and probably impossible, that a lawyer in another country would undertake to represent a company with such limited resources, particularly one with whom it has no relationship, because of the uncertainty about getting paid, including that his or her fees would be subject to the approval of a foreign bankruptcy court.

Additionally, substantial portions of this adversary proceeding are going to remain before this Court regardless of whether the State Law Claims are brought in Germany. Of the $8 million in

---

[7] This Court has awarded about another $42,000 in fees to counsel, but not yet approved them for payment. If those amounts were to be approved for payment, it would effectively deplete the remaining unencumbered assets in the estate.

damages BUSA seeks in its Amended Complaint, almost half relate to the recovery of claims that will most definitely be litigated in this Court, including the alleged preferential and/or fraudulent transfer of funds totaling $663,933.98, the determination of rights as to the $2.5 million in proceeds from the sale of the 10 Boats, and the value of any claims for tortious interference (which do not involve the Dealer Contracts) and the damages from the claims involving the July 2016 Agreement, which agreement does not include a forum selection clause. If the State Law Claims are dismissed and hypothetically brought in Germany, there might be overlapping discovery which would be even more costly on BUSA. Litigating two cases involving similar or related facts with the same parties will be even more time consuming and expensive. Further, BUSA and Yachtbau already have counsel in the United States and discovery has commenced.

Without the realistic ability to hire a lawyer in Germany, dismissing the State Law Claims here to compel BUSA to file them in Germany would be worse than a dismissal of the State Law Claims on the merits here because BUSA would not even have the right to appeal because the claims will never be brought. Accordingly, if BUSA is required to litigate the State Law Claims in Germany it will realistically lose its day in court because it cannot afford to do so.  Therefore, BUSA has met its burden in showing that the forum selection clauses should not be enforced for that reason.

### b.  Enforcement of the forum selection clauses in this case violates the public policy of the United States bankruptcy laws

Furthermore,[8] BUSA argues that the forum selection clauses violate the public policy of the United States bankruptcy laws. Specifically BUSA argues that allowing litigation in a different forum, particularly in a foreign country, would go directly against the purpose of the Bankruptcy

---

[8] The parties do not argue that the forum selection clauses should not be enforced based on the third factor—the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy.

Code. Conversely, Yachtbau argues that the forum selection clauses do not violate the public policy of centralizing bankruptcy proceedings because the claims here are non-core.

Certainly, there is the public policy of enforcing a contract. *Jefferson Cty. Comm'n v. Sargent Elec. Co. (In re Sargent Elect. Co.)*, 341 B.R. 514, 519 (Bankr. W.D. Penn. 2006). On the other hand, there is the public policy of centralizing bankruptcy proceedings, and there is a strong presumption in favor of maintaining the venue of an adversary proceeding where the bankruptcy is pending. *In re Hechinger Inv. Co. of Delaware, Inc.,* 288 B.R. 398, 402 (Bankr. D. Del. 2003). This presumption, generally, "is not so strong as to abandon the forum selection clause if the proceeding is non-core." *McCrary & Dunlap Constr. Co. v. CED Constr. Partners., Ltd. (In re McCrary & Dunlap Constr. Co.)*, 256 B.R. 264, 266 (Bankr. M.D. Tenn. 2000).

On the other hand, the presumption of maintaining venue in the chosen forum "is bolstered when, as here, the outcome of the proceeding will have a substantial impact on the administration of the bankruptcy case." *Prithvi Catalytic, Inc. v. Microsoft Corp. (In re Prithvi Catalytic, Inc.)*, No. 14-02176-GLT, 2015 WL 1651433, at *14 (Bankr. W.D. Penn. Apr. 8, 2015). This is especially relevant in this case. Let us start with what this case is not. It is not simply one adversary proceeding or claim objection among many filed in a case and which proceeding, in and of itself, will have a minor impact on the administration and outcome of the bankruptcy case. For all practical purposes, the progress and resolution of this adversary proceeding is the most important factor in the administration of this bankruptcy case. BUSA is holding a very small amount of unencumbered funds, probably not even enough to pay its remaining legal expenses, but it is holding almost $2,500,000 of funds which the parties dispute are property of the estate or property of Yachtbau and BUSA seeks to avoid and recover more than $600,000 of transfers it made to Yachtbau. Although Yachtbau does not dispute that this Court can and will enter a final judgment on those issues, the

distribution of any property of the estate resulting from any recovery on BUSA's bankruptcy claims will realistically have to wait until the State law Claims are resolved because there can be no meaningful distribution to creditors until the amount of Yachtbau's claim is determined as well as its priority.  Essentially, if this Court were to dismiss the State Law Claims in favor of a German court, and assuming the claims are even brought at all there, this Court would be turning over control of the efficient and economical administration of this estate to that German court, which is something this Court does not deem appropriate nor would it be comfortable doing because of the interests of the more than 60 or so other creditors with clams that may exceed $2,000,000.

"Because the bankruptcy system implicates interests far broader than the private rights of the two parties in question, it is not unusual for prepetition contract obligations, particularly those dictating forum … to be modified or even ignored in a bankruptcy case." *Walker v. Got'cha Towing & Recovery (In re Walker)*, 551 B.R. 679, 690 n.21 (Bankr. M.D. Ga. 2016) (finding an arbitration clause did not govern the core claims in the bankruptcy proceeding). The reasoning in *Walker* is persuasive in that the other unsecured creditors here should not be negatively affected by the contractual agreement between BUSA and Yachtbau. BUSA will likely not be able to pursue the State Law Claims if it is forced to litigate in Germany because of its limited financial resources which will complicate, if not make it impossible, to hire counsel in Germany.  In the meantime, the bankruptcy estate would benefit by this Court efficiently and expediently deciding the issues even if the result is not favorable to BUSA. Therefore, if the State Law Claims are sent to Germany, and BUSA does actually litigate them, but the remainder of the bankruptcy remains with this Court, the case would be drawn out over time while the issue of how much BUSA is entitled to set off is resolved. This prolonged period would adversely affect the administration of the estate.

Ultimately, this Court finds BUSA has met its burden in establishing that the forum selection clauses should be found to be invalid. As such, the forum selection clauses will not apply to the State Law Claims. Nevertheless, the Court will address Yachtbau's argument of *forum non conveniens*, despite finding that the forum selection clauses are invalid.

### 2.  The Forum Selection Clauses are not Enforceable Under the *Atlantic Marine Forum Non Conveniens* Analysis

Under the *Atlantic Marine* analysis, the private interest factors weigh entirely in favor of the chosen forum in the forum selection clause.  *Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir. 2017). As such, the analysis then "requires assessing the adequacy and availability of the proposed alternative forum, followed by balancing the public interests factors for and against granting dismissal for pursuit in the alternative forum." *Petersen v. Boeing Co.*, 108 F. Supp. 3d 726, 731 (D. Ariz. 2015).

The adequacy of the alternative forum, at least in terms of the competency of the German court is concerned, does not appear to be in contention and the Court finds no reason why this Court or a German court could not resolve these State Law Claims if called upon to do so.  Rather, the parties' arguments revolve around weighing the public interests. Therefore, the question before the Court is whether BUSA has established that the public interests factors sufficiently justify retention of jurisdiction despite the forum selection clauses.

The relevant public factors include the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial in a forum that is familiar with the law. *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016); *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 967 (11th Cir. 2014). Nevertheless, the underlying consideration for a § 1404(a) motion, and similarly a

*forum non conveniens* analysis, is whether a transfer or dismissal would promote "the interest of justice." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988).

First, administrative difficulties flowing from court congestion can be persuasive as a factor in determining whether the public interests require a dismissal. A court's ability to adjudicate complex litigation can be assessed. *Jacobs v. Terpitz (In re Dewey & LeBoeuf LLP)*, 552 B.R. 464, 479 (Bankr. S.D.N.Y. 2014) (finding Germany and New York would have the same administrative difficulties on either end because there are evidence and witnesses in both locations). It is apparent that both this Court and a court in Germany could handle the litigation and issues in this matter that are subject to the forum selection clauses.

However, the practicalities of dismissal of the State Law Claims raise a concern. Specifically, the entire bankruptcy case could be delayed based on the resolution of these State Law Claims. First, if the State Law Claims were dismissed, they would have to be refiled and brought before a German court. In the meantime, the progress of the Chapter 11 bankruptcy case would be adversely affected. The determination of whether BUSA was entitled to set off against Yachtbau's proof of claim is necessary before any distributions to other creditors could be made. Ultimately, there are practical concerns that affect not only the State Law Claims, but also this Chapter 11 bankruptcy proceeding and its more than 60 other creditors with potential claims exceeding $2 million. *See Eastcott v. McGraw-Hill Global Educ. Holdings, LLC*, No. 16-904, 2016 WL 3959076, at *3 (E.D. Penn. July 22, 2016) ("Plaintiff persuasively argues that the practicalities of a transfer to New York raise their own concerns, contending that the mechanics of transfer alone would cause delay, on top of added delay caused by relocation to a district where cases generally are disposed of at a slower pace."). This Court is not comfortable abdicating its ability to control the progress of the administration of this bankruptcy case and subjecting it to the preferences of another judge in another country who has

his or her own concerns and priorities about the administration of his or her own docket. Therefore, this first factor weighs in favor of this Court retaining all of the State Law Claims.

The second public interest factor is the local interest in having the controversies decided at home. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Steve Silver Co. v. Manna Freight Sys., Inc.*, No. 3:14-CV-2601-D, 2014 WL 5286624, at *4 (N.D. Tex. Oct. 15, 2014). More specifically though, the interest of having a dispute resolved locally should be read to avoid burdening jurors or a court with cases that have no impact on their community and focus on the nature of the dispute and the outcome it might have on the community. *Meijer v. Qwest Comm'ns Int'l, Inc.*, No. 09-cv-00162-REB-KLM, 2010 WL 1348668, at *7 (D. Colo. Mar. 31, 2010) (finding case will have greater effect in Netherlands where action involved allegations of fraud and mismanagement of a Dutch business); *see also Eastcott*, 2016 WL 3959076, at *3 (finding public interest factors favored retaining the action because infringement occurred and plaintiff did business in this district). Although a local interest exists here because BUSA is a Georgia company, which is counterbalanced against the interest Germany would have because Yachtbau is a German company.

More importantly though, the significance this adversary proceeding has to the administration of a related Chapter 11 bankruptcy case with than 60 creditors with potential claims of $2 million ultimately results in this Court having a greater interest in resolving this matter. *Meijer*, 2010 WL 1348668, at *7 (finding a court might have a stronger interest if there is a related bankruptcy proceeding or litigation pending). Yachtbau, will also benefit from the prompt and efficient administration of this adversary proceeding as it, too, will await any distribution it might receive. The mere fact that there is an adversary proceeding pending should not be enough; otherwise forum selection clauses would never apply in adversary proceedings because they are

generally related to bankruptcy cases.  But this adversary proceeding is different than most.  As mentioned before, the creditors and the entire administration of this case are affected by this adversary proceeding and its outcome. Therefore, allowing the State Law Claims to remain before this Court will promote the efficient and economical administration of the estate. *Impact Point Consulting, Inc. v. Dambowsky (In re Dambowsky)*, 526 B.R. 590, 607 (Bankr. M.D.N.C. 2015) (finding the bankruptcy court was the most efficient forum to resolve the overlapping dischargeability issues).

The third factor is the interest in having the trial in a forum that is familiar with the law. Notably, the parties dispute what law governs this matter—German or Georgia law. Without making a finding as to which law governs this matter, the Court does acknowledge that both Georgia state law and German law provide potential avenues of recourse for BUSA. *See* Introduction to German Law 129, 189, 347 (Mathias Reimann & Joachim Zekoll eds., 2d ed. 2005); Civil Code/BGB, *German Law Archive*, https://germanlawarchive.iuscomp.org/?page_id=611 (last visited September 29, 2017).[9] Furthermore, the State Law Claims—or in the alternative, their German law counterparts—are not specialized claims that would require the expertise of a specialized court.  This Court routinely applies the law of other states and statutes outside of the Bankruptcy Code and can certainly apply the law of another country and determine whether the elements of a cause of action arising under those laws have been satisfied.  Because this Court and a German court could sufficiently address these claims, the third factor is neutral in regards to the public interest in having a forum familiar with the applicable law.

---

[9] The following are some examples of potential claims under German law that are similar to BUSA's State Law Claims: German Civil Code/B.G.B. § 123 (rescission on the grounds of deceit and duress when "a person who has been caused to make declaration of intention by deceit or duress"), § 812 (unjustified enrichment is a claim where one "obtains something by performance by another … at the expense of this person"), and § 443 (guarantee of quality and durability holds a seller accountable where he guarantees "the quality of the thing … will retain a particular quality for a specified person"). Civil Code/BGB, *German Law Archive*, https://germanlawarchive.iuscomp.org/?page_id=611 (last visited September 29, 2017).

Finally, some courts have also considered judicial economy in the analysis of weighing the public interest. In *Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls Inc.*, a non-bankruptcy case, the district court found the public interest in judicial economy weighed heavily in favor of denying the motion to transfer venue. No. 08-4578, 2015 WL 65298, at *4 (E.D. La. Jan. 5, 2015). Other courts have considered the percentage of the claims subject to a forum selection clause to all of the claims in the litigation, as well, and found that judicial economy favored litigating all the claims together. *Eastcott*, 2016 WL 3959076, at *3 ("The public interest factors support retaining this action."); *In re LMI Legacy Holdings, Inc*., 553 B.R. 235, 241-42, 257-58 (Bankr. D. Del. 2016)(interest of judicial economy is better served by retention of claim such that it outweighs deference to a valid forum selection clause).

Similarly, this Court has been involved with this case since the bankruptcy petition was filed in October of 2016. This Court has become very familiar with the facts and legal disputes in the bankruptcy and adversary proceeding. And Counts VII and VII (avoidance and recovery of preferential transfer under §§ 547, 548, and 550), Count IX (fraudulent transfers under state law), Count X (determination of validity, priority or extent of Yachtbau's interest in the 10 Boats), Count XI (claim objection), and Count XII (equitable subordination) are undisputedly not governed by the forum selection clause, and this Court has found that the claims for tortious interference and those under the July 2016 Agreement are not subject to the forum selection clauses. Therefore, six or seven or more claims would remain before this Court even if the remainder were dismissed by this Court, which is half or more of the claims in the Amended Complaint. Judicial economy favors litigating these claims together as the court did in *Eastcott* and *LMI*. Further, all the claims in the Amended Complaint will likely revolve around the same or similar discovery, including witnesses and facts. It would not make sense for this Court to dismiss the State Law Claims for BUSA and

Yachtbau to essentially have to litigate similar or related claims in two different venues. As such, judicial economy seems to favor that all these claims remain before this Court.

Courts have noted that the holding of *Atlantic Marine* is based on its facts: one plaintiff, one defendant and all of the claims – not just some - being subject to the forum selection clause with the contractually agreed upon forum being in the United States as opposed to another country and there was no related bankruptcy case involved.  *Martin v. Bloomberg*, 740 F.3d 211, 230 (2nd cir. 2014)("forum selection clauses pointing to a foreign fora present distinct challenges not raised by clauses that merely point to other federal district courts."); *LMI,* 553 B.R. at 256 ("*Atlantic Marine* did not involve the bankruptcy specific concerns here.")   Although the Supreme Court pointed out in *Atlantic Marine* that "courts should not unnecessarily disrupt the parties settled expectations" embodied in a forum selection clause, 134 S.Ct. at 583, the intervention of this bankruptcy case and the filing of this Adversary Proceeding with core and non-core claims that are not subject to the forum selection clauses has necessarily disrupted the parties settled expectations.

Furthermore, the purpose or result of enforcing a forum selection clause should not be to multiply litigation and increase the costs of litigation between the parties.  Although forum selection clauses give commercial parties greater predictability about where they would engage in future litigation and "may have been a critical factor in [the parties] agreement to do business together in the first place" and "may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms," *Id.*, that purpose is not fulfilled and is actually counterproductive in a situation such as this where Yachtbau will be defending other substantial claims to which the forum selection clauses do not apply and cannot be applied in this United States Bankruptcy Court and which claims probably have substantial overlap and duplicative discovery to

those that are subject to the forum selection clause.[10] Enforcement of the forum selection clauses in this case offers Yachtbau neither cost savings nor predictability. Neither party should want to multiply litigation and increase the costs of litigation unless one party perceives that to be to its advantage because the other party cannot afford the increased costs or inconvenience. *See, e.g.*, Linda S. Mullenix, *Gaming the System: Protecting Consumers from Unconscionable Contractual Forum-Selection and Arbitration Clauses*, 66 Hastings L.J. 719, 737 (2015) ("Because of the enormous strategic advantage conferred by contractual forum-selection clauses on defendants and the fundamental unfairness of the law to consumers governing such provisions, it is thought provoking to view forum-selection clauses, then, as a strategic mechanism to game the system rather than through the lens of sanctified contract principles."). A court should not incentivize that type of litigation strategy by enforcing a forum selection clause if it will unnecessarily place burdens on multiple courts and needlessly increase the cost of litigation.

For the reasons previously discussed in this Order, this case presents the type of extraordinary circumstances that justify retaining venue over certain claims in the face of a forum selection clause. The Court finds that BUSA has met its high burden of establishing that the dismissal of the claims pursuant to the forum selection clauses is unwarranted. On account of the chilling effect enforcement of the forum selection clauses would have on the ability of BUSA to bring the State Law Claims in Germany and the consideration of the public interest factors which weigh in favor of retaining venue, the Court must deny Yachtbau's Motion to dismiss with respect to forum *non conveniens*.

---

[10] Yachtbau has also sued Kenny Feld, individually, for damages related to the parties' business relationship in the State Court of Fulton County, Georgia [Doc. 63] so not only is it going to be litigating claims in the United States Bankruptcy Court, but also in the state courts of Georgia. Yachtbau may argue it bargained for a German forum to resolve its disputes with BUSA, but the intervention of this bankruptcy case has them litigating in this Court and it has voluntarily chosen the State Court of Fulton County to pursue related claims against an insider of BUSA, so opening up a third front in this battle will not fulfill the purpose behind the contractual bargain of the parties.

### D. Consideration of Rule 12(b)(6) Motion to Dismiss

Next, Yachtbau argues that the following claims alleged by BUSA should be dismissed for failure to state a claim: fraud in the inducement, negligent misrepresentation, unjust enrichment, tortious interference, and equitable subordination. Federal Rule of Civil Procedure 12(b)(6)—which applies to adversary proceedings pursuant to Bankruptcy Rule 7012(b)—provides that a defendant in an adversary proceeding may move for dismissal for failure to state a claim upon which relief can be granted. To state a claim, a plaintiff's complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981)). A complaint which has simple "recitals of the elements of a cause of action, supported by mere conclusory statements" is insufficient to survive a motion to dismiss; rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). When determining whether the complaint is plausible, the "complaint must be construed in the light most favorable to the plaintiff and the factual allegations taken as true." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). As such, the Court needs to look at the alleged facts, reaching no conclusion as to whether the claims are valid but rather that the claims are plausible.

### 1. Fraud in the inducement

Count I of BUSA's Amended Complaint is Fraud in the Inducement. A party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Bankr. P. 7009. Intent

may be alleged generally, but a plaintiff must identify the precise misrepresentation or omission; the content of such statements; when, where, and by whom the statements were made; and what the defendant obtained as a result of the fraud. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Here, BUSA's Amended Complaint alleges sufficient facts to establish a claim of fraud in the inducement when Yachtbau allegedly induced BUSA to enter into contractual agreements. BUSA alleges Yachtbau made false statements, which include "that its sailboats were free from design and manufacture defects," that the 2% discount would cover all "customer service work, maintenance work, and repair work costs," and that Yachtbau promised to it would fix the defects in the yachts [Doc. 15 ¶ 40]. BUSA also claims that Yachtbau intended the false statements in order to persuade BUSA into entering agreements with it and to induce BUSA to act upon its statements. [Doc. 15 ¶ 41]. Therefore, BUSA's allegations in its Amended Complaint are sufficient to infer a plausible fraud in the inducement claim to survive a motion to dismiss.

### 2. Negligent misrepresentation

Count II in BUSA's Amended Complaint, pled in the alternative, is for negligent misrepresentation. A claim for negligent misrepresentation has three elements: (1) defendant's negligent supply of false information to foreseeable persons; (2) the person's reasonable reliance on that information; and (3) economic injury proximately resulting from the reliance. *SLW Partners, LP v. State Bank & Trust Co. (In re SLW Partners, LP)*, No. 11-5291, 2012 WL 5306246, at *4 (Bankr. N.D. Ga. Sept. 28, 2012). BUSA alleges that Yachtbau made statements that, but for its negligence, Yachtbau should have known to be false. [Doc. 15 ¶ 53]. As a result of such statements, BUSA contends it justifiably relied on them. [Doc. 15 ¶ 55]. Finally, BUSA alleges that as a result of its

reliance, Yachtbau suffered damages as a direct result of the statements and information Yachtbau

provided. The Court finds that BUSA has sufficiently pled facts that, if assumed by the Court to be

true, give rise to an inference of liability on the theory of negligent misrepresentation.

### 3.   Unjust enrichment

Alternatively, Count III is a claim for unjust enrichment. Unjust enrichment is an equitable

claim and allows recovery where there is no contract between the two parties, but the first party

provides the second party with a benefit that was induced or knowingly accepted, "such that it would

be inequitable for the second party to retain the benefit without paying compensation." *Anderson v.*

*Citizens Fidelity Mortg. Corp. (In re Money)*, 375 B.R. 704, 709 (Bankr. N.D. Ga. 2007). BUSA

argues that it conferred a benefit on Yachtbau—establishing Yachtbau's products and market in the

United States—and that Yachtbau has not provided for any payment for the value thereof. However,

BUSA fails to allege any real underpayment for the benefit it provided Yachtbau and merely alleges

that it would be inequitable for BUSA to not receive a remedy. [Doc. 15 ¶¶ 66-68]. *See In re Money*,

375 B.R. at 710 ("The facts … do not indicate that Citizens provided any benefit to Regions for

which Citizens did not receive compensation or that there was any underpayment by Regions when it

purchased the loan."). Further, it is clear from the record that there were multiple contracts between

the two parties. Therefore, the allegations in the Amended Complaint do not sufficiently allege facts

to allow an inference of liability under an unjust enrichment claim, so this claim must be dismissed.

### 4.   Tortious interference with contract

A claim for tortious interference with contract is found in Count VI of BUSA's Amended

Complaint. To prevail on a claim alleging tortious interference, a plaintiff must establish (1)

improper actions or conduct by the defendant without privilege; (2) the defendants induced a breach

of contract or caused a third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's conduct proximately caused damage to plaintiff. *Onbrand Media v. Codex Consulting, Inc.*, 301 Ga. App. 141, 150 (2009). Further, the defendant must be a stranger to the contract to which he interfered. *Milon v. Bank of Am., N.A.*, No. 2014-CV-244860, 2015 WL 11251957, at \*10 (N.D. Ga. Feb. 9, 2015) (granting motion to dismiss where defendant was hired to conduct a non-judicial foreclosure sale and all acts were within the scope of such duties as an agent). A defendant will not be a stranger if he has a legitimate economic interest in either the contract or a party to the contract. *Bond Safeguard Ins. Co. v. Wells Fargo Bank, N.A.*, 2014 WL 12629942, at \*5 (N.D. Ga. July 30, 2014) (granting motion to dismiss where defendant held interest in lot that made up the subdivisions that were being developed).

In this matter, BUSA has alleged that Yachtbau intentionally and unjustifiably interfered with BUSA's business relationships. [Doc. 15 ¶¶ 93-94]. Specifically, BUSA asserts that Yachtbau interfered with potential brokers who would sell the remaining yachts and potential buyers of the remaining yachts. As a result, BUSA claims it suffered damages when brokers refused to sell and buyers refused to buy the yachts. *Id.* There are no facts alleged establishing that Yachtbau was anything but a stranger to BUSA's alleged business relationships.[11] As such, BUSA has sufficiently pled facts to allow it to proceed with on its tortious interference claim.

---

[11] If it is ultimately determined that Yachtbau is the owner of the 10 Boats, that fact may provide Yachtbau with a defense to this claim.  In addition, if it is determined that Yachtbau only had an unperfected security interest in the 10 boats, that interest may not rise to a sufficient economic interest to be a defense to the claim, particularly if BUSA was attempting to sell the boats for an amount greater than what Yachtbau was contractually entitled to receive, all of which could be further affected by whether the alleged interference with the attempts to sell the 10 Boats occurred before or after the filing of the bankruptcy case. Those are all facts that are not on the table yet and are more appropriately raised at trial or on a motion for summary judgment.

### 5.  Equitable subordination

Count XII of BUSA's Amended Complaint is for equitable subordination. The three elements needed to establish such a claim are: (1) the claimant engaged in inequitable conduct; (2) the conduct injured creditors or gave unfair advantage to claimant; and (3) subordination of the claim is not inconsistent with the Bankruptcy Code. *Citrus Tower Boulevard Imaging Cent., LLC v. Key Equip. Fin., Inc.*, 520 B.R. 892, 904 (Bankr. N.D. Ga. 2014). The burden of proof of an equitable subordination claim also varies based on the status of the creditor. *Id.* If the creditor is not an insider or fiduciary, the debtor must establish the conduct was more egregious such as fraud, spoliation, or overreaching. *Id.* BUSA alleges that Yachtbau is an insider because it exercised substantial, if not complete, control over BUSA.  [Doc. 15 ¶ 160]. Further, BUSA argues Yachtbau acted inequitably, including promising to repair yachts as requested, ruining the value of the yachts, making false statements, and convincing BUSA to continue to enter agreements where it would provide money up front but Yachtbau failed to uphold its end. [Doc. 15 ¶¶ 166-67, 168, 174]. Additionally, BUSA claims that Yachtbau received an advantage and the other creditors have been injured because of delay tactics and intimidating conduct towards brokers and buyers. [Doc. 15 ¶¶ 167, 180]. Finally, BUSA contends that equitably subordinating Yachtbau's claims would not be inconsistent with the Bankruptcy Code. [Doc. 15 ¶ 183]. As such, BUSA has sufficiently pled facts that, if proven, could support a position that the purported misconduct provided Yachtbau with an unfair advantage such that its claim should be subordinated.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Renewed Partial Motion to Dismiss. Accordingly, it is hereby

**ORDERED** that Count III, Plaintiff's Unjust Enrichment claim, is **DISMISSED**, and it is

**FURTHER ORDERED** that remaining portions of the Renewed Partial Motion to Dismiss

is **DENIED** and the remaining claims shall proceed in this Court and not in a German court.

## END OF DOCUMENT

**Alexander Dombrowsky**
Robert Allen Law
The Four Seasons Office Tower
Suite 1400
1441 Brickell Avenue
Miami, FL 33131

**Louis G. McBryan**
McBryan, LLC
Suite 1150
1380 West Paces Ferry Rd.
Atlanta, GA 30327

**Richard L. Robbins**
Robbins Ross Alloy Belinfante
Littlefield LLC
Suite 1120
999 Peachtree Street, NE
Atlanta, GA 30309-3996

**Shayna M. Steinfeld**
Steinfeld & Steinfeld PC
P.O. Box 49446
Atlanta, GA 30359